**CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                        |
3 LAB, INC. and DAVID CHUNG,                |
                                                        |
             Plaintiffs,                         |
                                                        |         **Civ. No. 07-1056 (SRC)**
             v.                                    |
                                                        |
JISOO KIM a/k/a TINA KIM, et al.,        |         **OPINION**
                                                        |
             Defendants.                        |
_____|


**CHESLER**, District Judge

        This matter comes before the Court upon the motions to dismiss filed by Defendants

Michelle's Cosmetics, Inc., Michelle Kim, and Jin Young Noh [docket item 4] and Defendant

Jisoo Kim [docket item 6].  Plaintiffs 3Lab, Inc. and David Chung oppose Defendants' motions

to dismiss and have submitted a cross-motion for discovery limited to jurisdictional issues

[docket items 12 and 14].  The Court has reviewed the papers submitted in support of and in

opposition to the motions, and for the reasons set forth below, Defendants' motions to dismiss

for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) are

**granted** and Plaintiff's cross-motion for discovery is **denied**.

-1-

**I. Background**

Plaintiff initiated this action in this Court, pursuant to 28 U.S.C. § 1332(a), asserting

claims for trade defamation, defamation, tortious interference, and breach of the covenant of fair

dealing.  On June 1, 2007, Defendants Michelle's Cosmetics, Inc., Michelle Kim, and Jin Young

Noh timely filed this motion to dismiss asserting lack of personal jurisdiction, Fed. R. Civ. P.

12(b)(2).  On June 7, 2007, Defendant Jisoo Kim filed a separate motion to dismiss asserting lack

of personal jurisdiction, Fed. R. Civ. P. 12(b)(2); failure to state a claim, Fed. R. Civ. P. 12(b)(6);

and asking the Court to dismiss on the basis of forum non-conveniens, or in the alternative, to

transfer the action to the Northern District of Georgia.  Plaintiffs submitted opposition to the

motions, asserting this Court has personal jurisdiction over all Defendants and cross-moved for

limited discovery on the personal jurisdictional issues, and requesting that if the Court found

Plaintiffs' complaint deficient, for leave to amend the complaint.

Plaintiff 3Lab, Inc., is a business organized under the laws of New Jersey and with its

principal place of business in New Jersey and Plaintiff David Chung is a citizen of New Jersey.

Defendant Jisoo Kim is a citizen of Georgia; Defendants Michelle Kim and Jin Young Noh are

both citizens of California; and Defendant Michelle's Cosmetics is a business organized under

the laws of California, with its principal place of business in California.

Plaintiff Chung formerly owned retail cosmetics businesses in California, New Jersey,

and New York, and Defendants Jisoo Kim, Michelle Kim, and Jin Young Noh all previously

worked in Chung's various stores.  According to Chung, Jisoo Kim worked at three of his stores:

Mona's Cosmetics, located in Englewood Cliffs, New Jersey from 1993 to 1994; Cici's

Cosmetics, located in New York City, New York in 2002; and Mona's Cosmetics in Queens,

New York from December 2002 through January 2004.[1]  (Complaint at ¶ 13).  According to

Plaintiffs, Jisoo Kim terminated her business relationship with Chung on "bad terms" in 2004,

because, during her employment she improperly sought to obtain corporate advantages.

(Complaint at ¶ 13).  Jisoo Kim moved to Georgia in 2004, where she currently resides and

operates a retail cosmetics store.  Jisoo Kim last purchased products from 3Lab in 2005, (Jisoo

Kim Aff. at t ¶5), and  Plaintiffs believe Jisoo Kim's Georgia-based business continues to

purchase cosmetic supplies in New Jersey.  (Chung Aff. at ¶13-14).

Michelle Kim served as Assistant Manager of Cosmetics World, located in Los Angeles,

California, from 1995 through early 2003.  (Complaint at ¶ 14).  Jin Young Noh was the manager

and president of Cosmetics World in Los Angeles from 1994 through November 2002.

(Complaint at ¶ 15).  Michelle Kim and Jin Young Noh continue to reside in the Los Angeles,

California region, where they now operate Michelle's Cosmetics, Inc., a business that advertises

and sells cosmetics only in Southern California.  Plaintiffs believe Michelle's Cosmetics

currently purchases products from various New Jersey companies.  (Chung Aff. ¶14).

Chung contends that after his business relationship ended with Michelle Kim and Jin

Young Noh they "began taking steps to sabotage plaintiffs' business activities[.]" (Complaint at

¶16).  The allegations before this Court seem to center around a Korean television program, "PD

---

[1]The complaint is not clear as to which of the two Mona's Cosmetics shops Jisso Kim
worked between 2002 and 2004 – the Complaint states that Jisoo Kim worked at the New Jersey
store in 1993 and 1994, and simply states that she worked at Mona's Cosmetics between 2002
and 2004.  Jisoo Kim states that she worked at Plaintiff Chung's New Jersey store from 1993-
1994, and at Mona's cosmetics in New York City from 2002 through 2004. (Jisoo Kim Aff. at
¶3-4).  As Jisoo Kim's statement is not inconsistent with the information in the complaint or any
statements in Plaintiffs' brief, the Court will assume Jisoo Kim's statement to be correct for
purposes of this motion.

Diary," that produced an investigative news story about Chung's new company, 3Lab. (Complaint at ¶20-27).  3Lab produces luxury cosmetics and, in 2003, formed a contractual relationship with an independent legal business entity in Korea to export its products for sale in Korea.  (Id. at ¶18.  Plaintiffs and the independent retailer invested "millions of dollars in the design, production, manufacture, and marketing preparations" and launched the retail and distribution business sometime in 2005.  (Id. at ¶19).

On August 29, 2006, MBC, a Korean news channel, aired the investigative news program, "PD Diary."  (Chung Aff. at ¶ 3).  The fifty-minute program focused exclusively on 3Lab, and reported that 3Lab, which purports to produce and sell luxury cosmetics, actually produces products of inferior quality.  (Chung Aff. at ¶3).  Plaintiffs assert the Korean language program aired in Korea and in the United States, including New Jersey, and caused damage to 3Lab's trade name and reputation, and caused "interruption and interference" to Plaintiffs' business.  (Id.)

According to Plaintiffs, "[u]pon information and belief . . . Jisoo Kim caused and/or contributed to the production and/or airing of the false and defamatory statements uttered against defendants by PD Diary" and "PD Diary reporters and producers engaged in various activities in [New Jersey] in pursuance of 'facts' underlying their story.  Upon information and belief, all those acts were led and planted by some [or] all of the defendants."  (Complaint at ¶21-22). Plaintiff further asserts that in February 2007, "and on other previous occasions," Jisoo Kim made false and defamatory remarks, "consistent with information used in the PD Diary story," and that Jisoo Kim and Michelle Kim have told unidentified "third-parties" that Plaintiffs are bankrupt, and that Plaintiffs' products are "fraudulent" or "phony cosmetics."  (Complaint at

-4-

¶23-24).  Finally, Plaintiff states that "[a]ll defendants and certain unknown persons are believed to have [willfully] engaged in the legal violations against plaintiffs."  (Complaint at ¶27).

In opposition to Defendants' motions to dismiss and in support of Plaintiffs' cross-motion for discovery, Chung states that certain unidentified PD Diary reporters informed him that "'three individuals' from the United States" provided the information for the investigative news report, and Chung "believe[s]" the "'three sources' . . .  included at least one of the defendants."  (Chung Aff. at ¶6).  Moreover, before the program aired in August 2006, one or more of the unidentified sources traveled from the United States to Korea "to participate in conferences with PD Diary" and "the PD Diary news team traveled to New Jersey in pursuit of the story planted by their 'sources.'" (Id. at ¶11-12).

Plaintiffs also assert additional facts for the first time in opposition to the motions to dismiss, and seems to indicate that one or more of the Defendants may have provided a "tip" that resulted in Estee Lauder investigating Chung's company[2] for selling "grey market" products in violation of his distribution agreement, which resulted in a three to four month suspension of his contract to distribute their products.  (Chung Aff. at ¶9-10).  Chung also contends Defendants were among only a "handful of individuals" privy to "insider information" that was "spread in the media and the Internet" and directed at Plaintiffs, and Plaintiffs believe Defendants have posted information on the Internet "intending [Plaintiffs] to be smeared in New Jersey."  (Id. at ¶10-11).

_____

[2]Chung does not make clear if he is referring to 3Lab, or to another of his companies.

**II. Discussion**

"It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir.2003) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir.2002)).  However, where, as here, a defendant has raised the defense of lack of personal jurisdiction, "the plaintiff bears the burden to prove, by a preponderance of evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (1992) (citing Time Share Vacation v. Atlantic Resorts, Ltd., 735 F.2d 61, 65 (3d Cir.1984)).

A federal court typically must conduct a two-step analysis to ascertain whether personal jurisdiction exists.  First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the out-of-state defendant.  Then, the court must determine whether the exercise of personal jurisdiction would be repugnant to the Due Process Clause of the Fourteenth Amendment.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998); Vetrotex Certaineed Corp. v. Consol. Fiber Glass Prods Co., 75 F.3d 147, 150 (3d Cir.1996).  In New Jersey, the inquiry may be collapsed into a single step because New Jersey's long-arm statute "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection." Carteret, 954 F.2d at 145.

Personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant, the forum, and the litigation."  Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).  "Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant."  IMO Industries, 155 F.3d at 259

-6-

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). However, the Fourteenth

Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where

"the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws." Burger King Corp., 471 U.S. at

475 (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).

Personal jurisdiction may be exercised under either a general or specific jurisdiction

theory. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir.2001). Specific jurisdiction is invoked

when a claim is related to or arises of out the defendant's contacts with the forum. Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec.

Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir.1984). A court must first determine whether the

defendant had the minimum contacts with the forum necessary for the defendant to have

"reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. 286, 297 (1980) (citations omitted).

What constitutes minimum contacts varies with the "quality and nature of defendant's

activity." Hanson, 357 U.S. at 253. However, there must be at least "a single deliberate contact"

with the forum state that relates to the cause of action. U.S. Golf Ass'n v. U.S. Amateur Golf

Ass'n, 690 F.Supp. 317, 320 (D.N.J.1988). The unilateral acts of the plaintiff will not amount to

minimum contacts. Helicopteros, 466 U.S. at 414; Hanson, 357 U.S. at 253.

Where, as here, the plaintiffs allege the defendants committed an intentional tort, and the

non-resident defendants' contacts with the forum alone are insufficient to establish specific

personal jurisdiction, the court must also consider the "effects test" set forth in Calder v. Jones,

465 U.S. 783 (1984); IMO Indus., 155 F.3d at 259-60. To establish jurisdiction under the Calder

effects test, the plaintiff must demonstrate: (1) the defendant committed an intentional tort; (2) the forum was the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant "expressly aimed" the tortious activity at the forum state.  IMO Indus., 155 F.3d at 265-66.  "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum" is insufficient to establish jurisdiction.  Id.  The "plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  Id.

Once  minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Corp., 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state, and in evaluating the reasonableness, a court may consider: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiffs interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.  World-Wide Volkswagen, 444 U.S. at 292.  However, only in "rare cases" do the "'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'"  Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 116 (1987) (alteration in original, quoting Burger King Corp., 471 U.S. at 477-478).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros, 466 U.S. at 416.  To establish general jurisdiction the plaintiff "must show significantly more than mere minimum contacts" with the forum state. Provident Nat'l Bank v. Cal. Fedv Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir.1982). A particular defendant may be dismissed from a lawsuit if the court cannot assert personal jurisdiction over the defendant pursuant to this standard. Fed.R.Civ.P. 12(b)(2).

Here, Plaintiffs assert this Court has both specific and general jurisdiction over all Defendants.  However, neither the complaint nor the submissions in opposition to the motions dismiss provide any evidence of Defendants' minimum contacts with New Jersey, much less the continuous and substantial contacts with the state necessary to support general jurisdiction. Furthermore, specific jurisdiction is not salvaged by the Calder "effects test," as Plaintiffs have not set forth any basis to indicate Defendants manifested any "behavior intentionally targeted at and focused" at New Jersey.  See IMO Indus., 155 F.3d at 265.

First, Plaintiffs do not argue that any of the Defendants performed any actions in New Jersey giving rise to the claims asserted.  Plaintiffs merely "believe" that one or more of the Defendants were among "'three individuals' from the United States" who provided information to the producers and reporters of PD Diary and "believe" one or more of the unidentified sources traveled to Korea to meet with the PD Diary producers and reporters in advance of the program.

The most specific allegations are directed at Jisoo Kim.  Plaintiffs contend, "upon

information and belief" that "Jisoo Kim caused and/or contributed to the production and/or airing of the false and defamatory statements uttered against defendants by PD Diary"; that in February 2007, "and on other previous occasions," Jisoo Kim made false and defamatory remarks, "consistent with information used in the PD Diary story"; and that Jisoo Kim and Michelle Kim have told "third-parties" that Plaintiffs are bankrupt, that Plaintiffs' products are "fraudulent" or "phony cosmetics." (Complaint at ¶23-24). Plaintiffs' belief that one or more of the Defendants may have provided information to a Korean investigative news team, without any allegation of activity by the Defendants in New Jersey does not provide a sufficient basis to support specific jurisdiction. Stated another way, Plaintiffs fail to plead that any of the claims asserted arise out of any contact by any of the Defendants with the state of New Jersey.

Application of the Calder "effects test" does not change the outcome. In short, Plaintiffs have not pled facts indicating any of the Defendants manifested behavior intentionally targeted at, or focused on New Jersey. See IMO Indus., 155 F.3d at 265. Indeed, Plaintiffs have not even asserted Defendants knew 3Lab's principal place of business is in New Jersey, which in itself would be insufficient.[3] Plaintiffs' allegation that some of the Defendants may have provided information to a Korean investigative news program that aired "in Korea and the United States," (Chung Aff. at ¶ 3), is likewise insufficient.

Plaintiff also argues Jisoo Kim's admission that 3Lab supplied products to her store in 2005 is sufficient to provide this Court general personal jurisdiction over her. Plaintiffs also set forth a "belief that Jisoo Kim's Georgia-based business and Michelle's Cosmetics both currently purchase cosmetics supplies from . . . Shiseido," a New Jersey based company. The purchase of

[3]It should be noted that Plaintiffs' brief does not even mention the Calder effects test.

business supplies however, does not provide the continuous and systematic general contacts necessary to support general jurisdiction over Defendants.  Helicopteros, 466 U.S. at 417 (citing Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 518, 43 S.Ct. 170, 171, 67 L.Ed. 372 (1923)) (finding that "purchases of supplies and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction").  Given a record which demonstrates virtually no contacts by any of the Defendants with the state of New Jersey, jurisdiction fails under the standards of Due Process.

Because Plaintiffs have provided no evidence of any activity directed at New Jersey,  this Court will not grant discovery to allow Plaintiffs to attempt to bolster the claims against Defendants.  This Court further notes that the conduct of Plaintiffs' counsel filing this matter is precariously close to sanctionable behavior under Rule 11 of the Federal Rules of Civil Procedure, as Plaintiffs provides no record of an appropriate factual basis to support the claims presented.

With regard to the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), to which Plaintiffs have not even purported to respond, under the recent Supreme Court opinion in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), which addresses standards for pleadings, the allegations set forth in Plaintiffs' complaint are woefully inadequate.  If this matter were not dismissed for lack of jurisdiction, this Court would dismiss for failure to state a claim upon which relief could be granted.  Finally, Jisoo Kim's motion to dismiss for forum non-conveniens or to transfer to the Northern District of Georgia is moot.

**III.  Conclusion**

       For the reasons set forth above, Defendants' motions to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) are **granted** [docket items 4 and 6], and Plaintiff's cross-motion for discovery is **denied** [docket items 12 and 14].  An appropriate form of Order will be filed.


                                                                 s/ Stanley R. Chesler
                                                STANLEY R. CHESLER
                                                United States District Judge


Dated: July 26, 2007